We'll hear the last two cases together. McAllister v. Teamsters Local 917 and Quick Park. Good afternoon McAllister. Just hang on one second and we'll let counsel from the other case leave and counsel for the next case to step up. All right, Mr. McAllister, we're ready for you. Good morning, Your Honor. I would like to add something to the layoff that the Teamster and Quick Park had done to me. It was all right if my brother can explain it to you. Well, we usually don't allow non-lawyers to appear for someone else. The last time I was here, the judge let him do it. Are you unable to do it yourself? We have a rule that if you're not a lawyer, you can't represent someone else. That's the general way that we handle it. Anyway, okay then, the union states... Your brother's not a lawyer, I take it. No, but he's a union rep for his job. That's fine. Go ahead. We'll make an exception to the rule. Your brother can speak for you. Thank you. Good morning, Your Honor, and thank you for the opportunity for coming and speaking on behalf of my brother Morris. I've been following this case when it began back in 2012 when he was released and laid off from his job, and he's went through all of the process and the appeal process, and now that we're here. I was sitting back there in the audience and I heard quite a few interesting cases, and I did specifically hear you say something about terms and agreement. I believe in terms and agreement because currently I'm the president of Local 241, TWU, Transport Workers Union at Columbia University, and I've negotiated many, many contracts. And based on these contracts that we agreed to, it's agreed to in good faith by both parties. And in this case, I strongly believe that in the layoff of Morris, the company nor the local union provided Mr. McAllister, first of all, under his seniority and layoff article. They didn't provide him with a letter as the reason why he was laid off. Also, under his discipline and discharge, he should have received some kind of notice as the reason why they were discharging him from his position. Or at the same time, about a week or two later after Mr. McAllister got laid off, because they said the reason why he was laying off, because that position was no longer needed. They allowed someone else to continue to do his job. They're going to claim that they've offered Mr. McAllister another position, but his position that they were offering him was under entirely a different classification. Mr. McAllister was working as a porter, and the position that they was trying to offer him was a garage driver's attendant. And of course, they didn't give him ample amount of time to even go and get his license. So he wouldn't have been able to qualify for that position. I agree he did not have a driver's license at the time. Well, at the time, I believe he did not have a driver's license because under his- How could he be a parking lot attendant if he did not have a driver's license? Well, I said porter. They offered him a parking garage attendant driving and parking the cars. But under his classification, he was there as a porter, one who cleaned up the garage. But what they offered to him when the layoff came- Yeah, they eliminated the porter's position. But a week or two later, Mr. McAllister went back down there and there was someone doing not only just driving, parking the cars. They were also performing the work as a porter. So if that position was laid off or was no longer needed, then why was someone there? And just to brief talk about the seniority process here. If Mr. McAllister was working there for 15 years of his life, you're given 15 years of his life, and there was a layoff, you should be able to work for tenure. You should be able to work for seniority. So in the event of a layoff, if someone at another location just started that job 30 days, 45 days, there should have been an opportunity for Mr. McAllister to say, hey, look. There's got to be a bumping process here because I've earned my right to be employed. Why should I be laid off? And someone is coming in brand new with the company and continues to have their employment. That's where I feel that there's the injustice. And I just feel, though, an injustice to one worker is an injustice to all workers. All right, thank you. You have a minute for rebuttal, so we'll hear from the other side. Okay, thank you. Good afternoon, Your Honor. May it please the Court, I'm Robert McGovern representing Teamsters Local 917. As Mr. McAllister's brother pointed out, when Quick Park came and took over the contract at Stuyvesant Town Garage, it eliminated the position of porter and offered Mr. McAllister the opportunity to assume a position of parking attendant, which would have paid more money. Mr. McAllister did not have a license when we took his deposition a couple years back. He didn't have a license still. I don't know whether he has one to this day. Under the collective bargaining agreement, and this is in reference to the claim that Mr. McAllister went back to the garage afterwards and so are parking attendants performing porter duties under the terms of the collective bargaining agreement in Article 9, Employee Definitions, Section 4B. Well, 4A gives the job duties of a cashier. 4B gives the job duties of a parking attendant. The contract does not have any specific job duty description for porters. However, parking attendant, in addition to the obvious of parking the cars when customers bring them in and retrieving cars when customers come to get the cars, it also says that parking attendant job may also include cleaning parking facilities, whether by hand or mechanical equipment, replacing light bulbs, other minor maintenance. And in terms of the management rights clause in the contract, it very clearly gives the company the right to assign employees any duties it deems fit. We're talking about the collective bargaining agreement. Interestingly, though, this collective bargaining agreement was not with Quick Park, which was a successor employer. It was with company Imperial Parking, which had been the predecessor employer. Under the circumstances, when Quick Park came in, it's the one that eliminated the porter position. And when it assumed the contract, Local 917 spoke to them on Mr. McAllister's behalf, but they were adamant that they were not going to have porters there because they didn't have porters at any of their facilities. All right. We're out of time, unless your colleague wants to cede you some of his time. Well, just to sum up, as the district court's decision is clear, there's absolutely no evidence of any discrimination in this case based upon race. There's absolutely no evidence in this case of discrimination based on age, and there's clearly no evidence that Local 917 engaged in any retaliatory conduct under either Title VII or the Age Discrimination Employment Act. Thank you. Thank you. Mr. Katz? May it please the court, Harris Katz from Wingetts, Betafore, and Schwartzburg for the appellee Quick Park. The district court properly granted Quick Park's summary judgment motion. There was no evidence in front of the district court that appellant's discharge was motivated by age. In fact, the individuals that the appellant identified as being younger than him were actually older than him. In addition, your honors, there was a legitimate nondiscriminatory reason for the appellant's discharge, which was that the porter position had been eliminated. The other porter that was eliminated was Oscar Guerrero, who was Hispanic, and the appellant's claim for racial discrimination also was presented with no evidence that the discharge was motivated by race. In addition to Oscar Guerrero, who was Hispanic, two of the individuals identified by the appellant were Haitian. So in sum, your honors, we don't see that there was any evidence submitted that the termination was motivated by age or race, and there was a legitimate nondiscriminatory reason for the discharge. And therefore, the district court's decision was entirely correct. Thank you. Thank you. Mr. McAllister, you have a minute for rebuttal. Your honor, if you carefully listen to their testimony, I believe that their testimony is solely based on the question of whether it was age or race or discrimination. I believe in this case, they have not spoken at all about the terms of the agreement, in which the two parties came to protect not only the local, but the employee itself. And in this case, the employee right, whether the company decides under their right, under their article, the right to lay people off, they have that right to do that. But it's still the bill of right of an employee to go through a grievance procedure. Here, in this case, it seems as though, is that the company and the local not providing any notification, any information as to reasoning or why they laid Mr. McAllister off. They did not talk about his attendance, they did not talk about his performance, they did not talk about his work. They said that they just was eliminating a position there. But based on the terms of the agreement, they have clearly, they have clearly violated this bargaining agreement collectively between Impartial Park in USA and the local 917, dated July 1st, 2010 to 2013. Because Mr. McAllister was never afforded an opportunity to sit down and get represented fairly and fully by his representative. So this is really the brunt of the case, not the age, the race, or the discrimination. It's about what they did unfairly and unjustly to a worker who devoted his life, 15 years, to this company. I just don't believe that no one should be treated in this way. Thank you, we understand your arguments. We'll reserve decision that completes the calendar for the day. I'll ask the clerk to adjourn. Court stands adjourned.